IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KENT-STEPHEN KINLOCKE,

     Plaintiff,

v.

CASEY T. BENTON, *et al.*,

     Defendants.

CIVIL ACTION FILE

NUMBER 1:16-cv-4165-TCB

# O R D E R

This case comes before the Court on the motion of Defendants

Casey T. Benton, J.E. Fox, and DeKalb County, Georgia, for judgment

on the pleadings [12].

## I.  Background[1]

Plaintiff Kent-Stephen Kinlocke is a resident of Stone Mountain,

Georgia. On Saturday, November 4, 2014, at approximately 10:10 a.m.,

Kinlocke was walking eastbound on the center median of Memorial

---

[1] When reviewing a motion for judgment on the pleadings, all well-pleaded facts in the complaint are taken as true. *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008).

Drive, near Lauren Parkway in Stone Mountain. Defendant Benton, an officer with the DeKalb County Police Department, was driving on Memorial Drive when he saw Kinlocke walking on the median. He made a U-turn in order to approach Kinlocke, but by then Kinlocke had crossed Memorial Drive. Benton then turned the car around again and pulled onto the sidewalk near Kinlocke.

Benton approached Kinlocke from behind, repeatedly calling "Sir."[2] Kinlocke neither heard nor responded to Benton. Benton then reached out and grabbed Kinlocke's arm, at which point Kinlocke asked, "What is the problem?" Benton told Kinlocke to stop walking. In response, Kinlocke emptied his pockets and told Benton that "I [have] nothing on me." Kinlocke continued walking.

Benton walked in front of Kinlocke, pointed his taser at him, and grabbed Kinlocke's left arm. He told Kinlocke that he was stopping him because Kinlocke had been walking on the center median. Benton told Kinlocke that if he did not stop walking, he would be tased.

---

[2] Portions of the interaction between Benton and Kinlocke were captured by Benton's body camera.

2

Kinlocke began walking diagonally onto Memorial Drive. Benton released Kinlocke's left arm and deployed his taser into that same arm. Benton placed Kinlocke under arrest for crossing at other than a crosswalk—pursuant to O.C.G.A. § 40-6-92—and for obstructing or hindering law enforcement officers—pursuant to O.C.G.A. § 16-10-24.

Benton removed the taser barbs from Kinlocke's arm, where Kinlocke was bleeding. He was handcuffed and placed in the rear of Benton's police car. Emergency medical technicians ("EMTs") arrived on the scene and assessed that Kinlocke showed symptoms of tachycardia—an elevated heart rate—and hypertension—elevated blood pressure. Kinlocke complained that he was not feeling well and that he wanted to go to a hospital. The EMTs recommended that Kinlocke be taken to a hospital for treatment.

Defendant Fox, also an officer with the DeKalb County Police Department, advised the EMTs that he would transport Kinlocke to Grady Hospital and signed a document refusing an ambulance transport. Instead of taking Kinlocke to the hospital, Fox took him to the DeKalb County Jail.

3

Kinlocke was given treatment at the jail, but his pulse and heart rate remained elevated. After his release,[3] Kinlocke was treated at Oakhurst Medical Center. He had abnormally high blood pressure and showed signs of irregularities on his electrocardiogram. Kinlocke claims he continues to suffer physical and mental health issues as a result of the tasing and the delay in receiving medical care.

On May 11, 2015, the charges against Kinlocke were dismissed. On November 7, 2016, Kinlocke brought this action against Benton, Fox, and DeKalb County. He pleads federal causes of action under 42 U.S.C. §§ 1983 & 1988 for violations of his rights to be secure in his person, to be free from unreasonable searches and seizures, and to be free from excessive use of force. These claims encompass his arrest, the tasing, and the delay or denial of medical care.

Kinlocke also pleads state-law claims of assault and battery, false imprisonment, and false arrest against Benton, and negligence against Fox. He alleges that DeKalb County is liable for all of the claims against Benton and Fox.

---

[3] Kinlocke does not specify how long he remained at the jail.

4

In the caption of the complaint, Kinlocke indicates that the claims against Benton and Fox are in both their official and individual capacities. He seeks general, special, and punitive damages against all Defendants, as well as attorneys' fees.

## II.    Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Judgment pursuant to Rule 12(c) is appropriate "when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002). "A motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *Roma Outdoor Creations, Inc. v. City of Cumming*, 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008).

When deciding a motion for judgment on the pleadings, the Court accepts factual allegations in the complaint as true and construes all reasonable factual inferences in the Plaintiff's favor. *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008). However, "the

court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *accord Lewis v. Brautigam*, 227 F.2d 124, 127 (5th Cir. 1955). To survive a motion for judgment on the pleadings, a complaint must convey factual allegations that amount to "more than labels and conclusions" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III.   Analysis

### A.   Municipal Liability

#### 1.   Liability Under Section 1983

"Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). The statute "does not in itself create federal rights, but rather provides a vehicle for asserting those rights in situations where a plaintiff 'was deprived of a federal right by a person acting under color

6

of state law.'" *Sprauer v. Town of Jupiter*, 331 F. App'x 650, 652 (11th Cir. 2009) (quoting *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001)).

Municipalities cannot be held liable under section 1983 for the acts of municipal officials unless the plaintiff can show a "municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* at 404. Under section 1983, "local governments [such as counties] can never be liable . . . for the acts of those [officials] whom the local government has no authority to control." *Grech v. Clatyon County,* 335 F.3d 1326, 1331 (11th Cir. 2003) (quoting *Turquitt v. Jefferson County*, 137 F.3d 1285 (11th Cir. 1998)).

Kinlocke has not identified any policy or custom that caused his injuries. Instead, he alleges that DeKalb County's "failure to train amounted to deliberate indifference" to his rights.[4]

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* Thus, to hold a municipality liable on this basis, the "municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also AFL-CIO v. City of Miami*, 637 F.3d 1178, 1188 (11th Cir. 2011) ("[I]t must have been obvious that the municipality's failure

---

[4] Kinlocke also flatly states that "DeKalb County was the moving force" behind the alleged violations, but does not explain how. [1] at ¶64. While the Court accepts as true all well-pleaded facts in the Complaint, the Court need not accept as true legal conclusions that are cast in the form of factual allegations. *Lewis*, 227 F.2d at 127.

to train or supervise its employees would result in a constitutional violation.").

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. A plaintiff can meet this standard by showing (1) that a municipality's policymakers were on "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights" yet chose to keep the program, *Connick*, 563 U.S. at 61; or (2) the "existence of a pattern of tortious conduct by inadequately trained employees" that is the "'moving force' behind the plaintiff's injury," *Brown*, 520 U.S. at 407–08 (quoting *Canton*, 489 U.S. at 390–91).

Kinlocke has identified neither any constitutionally deficient training program, nor a pattern of similar constitutional violations that would put DeKalb County on notice that its officers engaged in unlawful uses of force or denied medical treatment to arrested individuals. Instead, his failure-to-train allegation is merely an attempt

to bootstrap liability onto the County for the alleged actions of Benton and Fox.

Kinlocke does allege that Benton was "involved in at least two prior inciden[ts] involving use of force and failure to transport an arrestee to the hospital for treatment rather than to jail for incarceration." [1] at ¶61. In the complaint, Kinlocke does not indicate how Benton's previous actions resemble the actions he took in this case, nor the extent to which DeKalb County was aware of these incidents. In subsequent briefing, Kinlocke described a September 22, 2014 incident in which Benton leaned his body into a complainant's vehicle, threatened to break the vehicle's windshield, and ultimately arrested the complainant without probable cause. *See* [15] at 6–7. DeKalb County determined that Benton had violated its policy concerning conduct unbecoming of an officer. *Id.* No explanation of the second alleged incident of misconduct is given.[5]

---

[5] It is also unclear how many separate incidents Kinlocke is alleging Benton was involved in: is it one incident each of unlawful use of force and denial of medical care, or two of each, or two incidents that involved *both* unlawful use of force and denial of medical care?

10

Even assuming these allegations are true, they do not raise Benton's actions to the level of a county-wide custom or policy, nor do they show deliberate indifference to protecting constitutional rights. The 2014 incident did not involve a taser or bodily injury, nor did it involve denial of medical treatment. Benton's previous resort to a violent threat, no matter how inappropriate, did not make his interaction with Kinlocke "a known or obvious consequence" of the County's actions, especially in light of the County's decision to reprimand Benton for his 2014 conduct. *See Brown*, 520 U.S. at 410. Hence, this allegation is insufficient to demonstrate deliberate indifference by DeKalb County.

Similarly, under section 1983, a "custom" is a practice that is "so widespread as to have the force of law." *Id.* Benton's alleged actions are not sufficiently widespread to rise to the level of a county custom. Finally, a "policy" requires intentional action, not tacit authorization, *id.*, and Kinlocke has not alleged any intentional acts by DeKalb County.

11

Thus, Kinlocke has not pleaded sufficient facts to support a conclusion that DeKalb County was the moving force behind his injuries. Therefore, DeKalb County is entitled to judgment on the pleadings on the section 1983 claims.

### 2.    State-Law Claims

In addition to the federal section 1983 claims against DeKalb County, Kinlocke alleges that DeKalb County is liable under state-law claims of assault and battery, false imprisonment, false arrest, and negligence. DeKalb County asserts that it is entitled to the protection of sovereign immunity, and thus the Court lacks subject-matter jurisdiction over these state law claims. Kinlocke did not respond to the claim of sovereign immunity, and on that ground alone it could be granted. *See Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (citing *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995))).

Regardless, DeKalb County's argument is persuasive. The State of Georgia, as a sovereign, is immune from suit absent an express waiver. GA. CONST. ART. I, § II, ¶ IX(e); *Reeves v. Wilbanks*, 542 F. App'x 742, 746 (11th Cir. 2013). The state's sovereign immunity extends to counties. O.C.G.A. § 36-1-4; *James v. Richmond Cty. Health Dep't*, 309 S.E.2d 411, 416 (Ga. Ct. App. 1983). "[T]he sovereign immunity of the state and its departments and agencies can be waived only by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of the waiver." *Welborn v. DeKalb Cty. Sch. Dist.*, 489 S.E.2d 345, 379 (Ga. Ct. App. 1997). The burden of establishing a waiver of sovereign immunity is on the plaintiff. *City of Atlanta v. Durham*, 751 S.E.2d 172, 174 (Ga. Ct. App. 2013).

Here, Kinlocke has pointed to no waiver of sovereign immunity that would cover the claims against DeKalb County, and the Court is not aware of any. Thus, the County is entitled to judgment on Kinlocke's state-law claims.

13

**B.     Official-Capacity Claims**

Benton and Fox move for judgment on the pleadings with regard to all official-capacity claims, arguing that because DeKalb County is a named Defendant, inclusion of individuals acting in their official capacity is redundant. *See Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly."). Kinlocke does not respond to this argument, and the Court finds it persuasive. Accordingly, Benton and Fox are entitled to judgment on all official-capacity claims against them.

**C.     Individual-Capacity Claims**

**1.     Federal Claims**

Kinlocke alleges that Benton and Fox, acting under color of state law, violated his constitutional rights based on the allegedly false arrest, unnecessary tasing, and unreasonable delay or denial of medical

14

care. Benton and Fox have asserted that they are protected from this claim by qualified immunity.

"Qualified immunity protects [state actors] from § 1983 suits for civil damages arising from the discharge of their discretionary functions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Douglas Asphalt Co.*, 541 F.3d at 1273. In order to claim qualified immunity, a defendant must first establish the challenged conduct was within the scope of his discretionary authority. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Once the defendant satisfies that burden, "the burden then shifts to the plaintiffs to establish a constitutional violation." *Id.*

Benton and Fox's decisions—whether to arrest a person, the proper amount of force to use to effect that arrest, and the method in which medical care would be administered to a person in custody—were undertaken pursuant to their duties as police officers and were within the scope of their authority, meaning they were discretionary acts. *See Jones v. City of Atlanta*, 192 F. App'x 894, 897 (11th Cir. 2006). Kinlocke does not contest this first prong of qualified immunity.

15

Next, a plaintiff seeking to overcome a defendant's qualified immunity privilege must show that (1) the state actor violated plaintiff's constitutional or statutory rights, and (2) those rights were clearly established at the time the state actor violated them. *Douglas Asphalt Co.*, 541 F.3d at 1273. The Court will analyze these factors for each individual officer in turn.

### a.   Benton

Kinlocke's section 1983 claims against Benton concern the use of the taser and Benton's decision to arrest Kinlocke.

First, with regard to the arrest, Kinlocke's claim fails because there was probable cause for his arrest. "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim. An arrest made with probable cause, however, constitutes an absolute bar to a section 1983 action for false arrest." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (internal citation omitted); *see also Pierre v. City of Miramar, Fla., Inc.*, 537 F. App'x 821, 825–26 (11th Cir. 2013) ("Pierre asserted a section 1983 claim against Defendant Officers based on false arrest and false

imprisonment. Because Defendant Officers had probable cause to arrest Pierre under federal law, Pierre cannot state a claim for relief under section 1983.").

"Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense." *Ortega*, 85 F.3d at 1525. "Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" *Id.* (quoting *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990)). This is an objective standard, without regard for the officer's subjective state of mind. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."). And when "an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." *Collins v.*

17

*Ensley*, 498 F. App'x 908, 910 (11th Cir. 2012) (quoting *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002)).

Accepting Kinlocke's alleged facts as true, Benton saw Kinlocke walking on the median of Memorial Drive. Benton made a U-turn so that he could approach Kinlocke, but by then Kinlocke was on the sidewalk. Thus, based on his own personal observations, Benton could deduce that Kinlocke had crossed Memorial Drive at a place other than a crosswalk, in violation of O.C.G.A. § 40-6-92. That this is a relatively minor violation is irrelevant;[6] Benton had probable cause to believe Kinlocke had committed a crime, and therefore Kinlocke cannot make a claim of false arrest under section 1983.

Next, with regard to the tasing, Kinlocke alleges that Benton used excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

In cases of excessive force, the Court must consider the perspective of a reasonable officer on the scene at the time the events

---

[6] *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

unfolded. *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009). This is an objective standard that "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also J.B. ex rel. Brown v. Amerson*, 519 F. App'x 613, 619 (11th Cir. 2013) ("*Graham* dictates unambiguously that the force used . . . must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight.").

The Eleventh Circuit has on multiple occasions upheld qualified immunity for a police officer who tased a suspect, including in cases where the suspect was violent and threatening toward a victim,[7]

---

[7] *See Floyd v. Corder*, 426 F. App'x 790, 792 (11th Cir. 2011) (tasing is not clearly established as excessive where plaintiff was "threatening" because he had struck a victim, was yelling, hit away the officer's hand, and made a move towards the victim).

belligerent or hostile toward a police officer,[8] or physically resisting

arrest.[9] However, when the suspect was compliant and non-violent,[10] or

where the suspect posed no threat to his own safety or the safety of

others,[11] officers may not be entitled to qualified immunity.

Here, the facts as alleged illustrate that Kinlocke was suspected of

committing a minor offense, and there are no allegations that he posed

a threat to himself or others. However, by his own admission, Kinlocke

attempted to evade Benton—despite Benton's orders to remain still—

though this resistance was "passive." [1] at ¶49.

---

[8] *See Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (taser use was reasonable where plaintiff was "hostile, belligerent, and uncooperative" because he used profanity, yelled at the officer, and refused orders to retrieve necessary documents).

[9] *See Barfield v. Rambosk*, 641 F. App'x 845, 848 (11th Cir. 2015) (holding that "noncompliance or continued physical resistance to arrest justifies use of force" in taser cases).

[10] *See Skelly v. Okaloosa Cty. Bd. of Cty. Com'rs*, 456 F. App'x 845, 848 (11th Cir. 2012) (holding that tasing a handcuffed and compliant pretrial detainee is excessive force).

[11] *See Harper v. Perkins*, 459 F. App'x 822, 825–26 (11th Cir. 2012) (denying qualified immunity when four officers tased intoxicated suspect who "1) was at least four feet up in a tree with his hands raised, (2) posed no threat to their safety or the safety of others, (3) had no chance, and did not attempt, to flee, and (4) merely put his hands in the air in compliance with the instructions of at least one officer.").

Viewing these facts in the light most favorable to the non-moving party, the Court cannot say at this time that Benton is entitled to qualified immunity. Given the apparently low-stakes nature of the encounter—the minor violation, the absence of a threat of violence, and the passive nature of the attempted flight—and the Eleventh Circuit's prior holdings in taser cases, Kinlocke has plausibly alleged that Benton violated his clearly established right to be free from excessive force.

Accordingly, while Benton is entitled to qualified immunity on the claim of false arrest, Kinlocke will be able to proceed with the excessive force claim.

### b.    Fox

Kinlocke alleges that Fox violated his right under the Due Process Clause of the Fourteenth Amendment to receive medical care for the injuries he received incident to his arrest.

"To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation

between that indifference and plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). A serious medical need is either one that has been diagnosed by a physician as mandating treatment, one that is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention," or one in which a delay in treatment would worsen the condition. *Id.* at 1307 (quoting *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). Additionally, a serious medical need "must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). "[I]n order to prove that a deputy acted with deliberate indifference, Plaintiffs must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence."*Id.* (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)).

Here, the complaint alleges that Kinlocke's left arm was bleeding at the site where he was tased and that he complained that he was not feeling well. He had elevated heart and respiratory rates, and EMTs at the scene advised that he should be taken to the hospital. These

22

allegations, taken in the light most favorable to Kinlocke, establish that he had a serious medical need. The EMTs onsite recommended that he be taken to a hospital, and while the extent of elevated heart and respiratory rates is not clear, they could plausibly lead a lay person to recognize the need for medical attention.

Next, Kinlocke has adequately alleged that Fox disregarded that medical need. First, Fox advised the EMTs that he would take Kinlocke to the hospital—thus demonstrating his knowledge of the risk. However, he instead chose to take him to the DeKalb County Jail, a deliberate choice. While it's not yet clear from the facts whether this would amount to a reckless disregard—a question that could turn on the adequacy of the jail medical facilities, the time it would take for Kinlocke to receive treatment in jail,[12] and the severity of his visible symptoms—Kinlocke has alleged sufficient facts that could plausibly show deliberate disregard by Fox.

---

[12] In his arguments opposing the current motion, Kinlocke asserts that he was tased at 10:20 a.m. and received medical attention at the jail around noon. *See* [13] at 15. However, this assertion is not based on allegations in the complaint, but on documentary evidence that was attached to Kinlocke's opposition brief. The Court will not consider such evidence at the judgment-on-the-pleadings stage. *See* FED. R. CIV. P. 12(d) (restricting courts from considering matters outside the pleadings unless motion is treated as one for summary judgment).

Finally, Kinlocke avers that the medical conditions he continues to experience are due to "the effects of being tased by Defendant Benton and not receiving immediate medical treatment," thus alleging the factor of causation. In sum, when viewing the facts in the light most favorable to Kinlocke, there are sufficient allegations to show that Fox violated Kinlocke's clearly established right to medical care, and hence Fox is not entitled to qualified immunity at this time.

### 2.   State-Law Claims

Kinlocke pleaded state-law claims of assault and battery, false imprisonment, and false arrest against Benton and negligence against Fox. Benton and Fox assert that they are entitled to protection based on state-law qualified immunity.[13]

The Georgia doctrine of qualified immunity offers limited protection to public officers and employees sued in their individual capacities. *Cameron*, 549 S.E.2d at 344. The doctrine "protects

---

[13] The doctrine is sometimes referred to as "official immunity." *See Cameron v. Lang*, 549 S.E.2d 341, 343 (Ga. 2001) ("[T]he trial court granted summary judgment to the officers and their government employers based on the doctrines of official (qualified) immunity and sovereign (governmental) immunity.").

individual public agents from personal liability for discretionary acts taken within the scope of their official authority, and done without willfulness, malice, or corruption." *Id.* (quoting *Teston v. Collins*, 459 S.E.2d 452 (Ga. Ct. App. 1995)). The doctrine also protects a public employee for the nonperformance of a discretionary act where the evidence shows that the act was done without actual malice or intent to cause injury in the performance of the employee's official functions. *Wendelken v. JENK LLC*, 661 S.E.2d 152, 154 (Ga. Ct. App. 2008).

"Actual malice, in the context of official immunity, means a deliberate intention to commit a wrongful or illegal act." *Tittle v. Corso*, 569 S.E.2d 873, 876 (Ga. Ct. App. 2002). It does not, however, include "implied malice," that is, "the reckless disregard for the rights or safety of others." *Murphy v. Bajjani*, 647 S.E.2d 54, 60 (Ga. 2007).

### a.   Benton

As discussed in Part III.C.1.a, *supra*, Benton personally observed Kinlocke committing an offense and thus had sufficient reason to arrest him. There are no allegations that Benton acted with malice or corrupt

intent toward Kinlocke. Therefore, Benton is entitled to qualified immunity on the claims of false arrest and false imprisonment.

Benton is entitled to qualified immunity on the assault and battery claim as well. While the Court previously discussed why Benton may have ultimately violated Kinlocke's established rights under the Fourth and Fourteenth Amendments, Kinlocke does not allege that Benton did so maliciously or with any intent commit a wrongful or illegal act. Moreover, Georgia courts have recognized that "[t]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," *Tittle*, 569 at 877 (quoting *Graham v. Connor*, 490 U.S. 386 (1989)), and have therefore only allowed assault and battery claims against officers where the "use of physical force was so excessive or unnecessary as to demonstrate a deliberate intent to do wrong," *Taylor v. Waldo*, 709 S.E.2d 278, 282 (Ga. Ct. App. 2011) (quoting *Tittle*, 569 S.E.2d at 873). Again, as no such intent was alleged here, and the level of force used was not sufficient to demonstrate malice or a deliberate intent to do

wrong, Benton is entitled to qualified immunity on the assault and battery claim.

### b.    Fox

As discussed in Part III.C.1.b, *supra*, Fox took custody of Kinlocke after he had been tased and transported him to the DeKalb County Jail—where he received medical treatment—rather than to the hospital. Kinlocke makes no allegations that this was done maliciously or with intent to do wrong. At worst, Fox may have disregarded a known risk with regard to Kinlocke's medical needs, but that amounts to reckless conduct, which cannot defeat an officer's assertion of qualified immunity under Georgia law. *See Murphy*, 647 S.E.2d at 60 (actual malice standard does not include "the reckless disregard for the rights or safety of others"). Accordingly, Fox is entitled to qualified immunity for the negligence claim.

## IV.   Punitive Damages

Kinlocke seeks punitive damages in this action, and Defendants have moved to dismiss this claim. While punitive damages are not available for claims against a governmental entity or for official-

27

capacity claims, individual-capacity claims can serve as the basis for an award of punitive damages. *See Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1047 (11th Cir. 2008) ("In a § 1983 action, punitive damages are only available from government officials when they are sued in their individual capacities." (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981))). Since the only remaining claims in this case are against Benton and Fox in their individual capacities, Kinlocke will be allowed to pursue punitive damages.

## V.    Conclusion

Defendants' motion for judgment on the pleadings [12] is DENIED with respect to the to the section 1983 excessive-force claim against Benton and the section 1983 medical-care claim against Fox in their individual capacities, and DENIED with respect to the punitive damages claim, but is GRANTED with respect to all other claims.

IT IS SO ORDERED this 19th day of June, 2017.

Timothy C. Batten, Sr.
United States District Judge

28